# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JOHN H. BALSEWICZ, *also known as* MELISSA BALSEWICZ,<br><br>                      Plaintiff,<br><br>v.<br><br>JONATHAN S. PAWLYK, CO ROBERT J. RYMARKIEWICZ, JEREMY L. WESTRA, and ANTHONY L. MELI,<br><br>                      Defendants. | Case No. 18-CV-97-JPS<br><br>**ORDER** |

### 1.     INTRODUCTION

Plaintiff John H. Balsewicz, a transgender prisoner also known as Melissa Balsewicz ("Balsewicz"), is currently incarcerated at Waupun Correctional Institution ("Waupun"). She alleges that several correctional staff members at Waupun were deliberately indifferent to a serious risk to her safety, in violation of her rights under the Eighth Amendment.

The parties have filed cross-motions for summary judgment. (Plaintiff's Motion, Docket #28; Defendants' Motion, Docket #35). Those motions are now fully briefed and ripe for adjudication. For the reasons explained below, Defendants' motion must be granted. Balsewicz's motion will be denied as moot, and this case will be dismissed.

### 2.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

3.  **RELEVANT FACTS**

The following facts are material to the disposition of the defendants' motion for summary judgment. They are drawn from the parties' factual briefing, (Docket #29–#30, #37–#42, #44, #46), unless otherwise noted. Consistent with the standard of review the Court applies to defendants' motion, these facts are presented in a light most favorable to Balsewicz.

At all times relevant to this case, Balsewicz was incarcerated at Waupun. She is transgender and has been diagnosed with gender dysphoria ("GD"). Inmates at Waupun with GD are housed in the north cell hall ("NCH"). Robert Rymarkiewicz "Rymarkiewicz" is the captain in charge of the NCH. Jonathan Pawlyk ("Pawlyk") is a sergeant who works in the NCH. Anthony Meli ("Meli") is Waupun's security director. Jeremy Westra ("Westra") is the captain in charge of "special placement needs" ("SPN") at Waupun, which the Court gathers is an administrative designation used for inmates who require physical separation from other inmates or staff.

Sometime in early 2017, an inmate at Waupun named Denzel Rivers ("Rivers") started showering with or near the GD inmates.[1] According to Balsewicz, Rivers had admitted to the GD inmates that he was not actually transgender but was claiming to be in order to receive a single cell. During shower time on May 5, 2017, Rivers told Balsewicz to stay out of the shower stall between two other GD inmates, Homer Washington ("Washington") and Cashay Henderson ("Henderson"), and when Balsewicz asked why, Rivers replied, "Don't worry about it, punk ass hunky! I'll beat the fuck out of you!" (Docket #41 at 5).

Balsewicz finished her shower and immediately told Pawlyk about the incident in the bath house. According to Balsewicz, she told Pawlyk that Rivers should not be allowed to shower with the GD inmates because he was not transgender, and she also told Pawlyk about the threat. The defendants dispute that Balsewicz told Pawlyk that Rivers threatened her, but for the purpose of resolving the defendants' summary judgment motion, the Court must credit Balsewicz's story.

Two days later, on May 7, Rivers punched Balsewicz in the head as the two left the chow hall. Balsewicz saw a nurse after the assault, but she did not require further medical treatment. Rivers was given a conduct report for assaulting Balsewicz and was placed in segregation. During a disciplinary hearing related to that charge, at which Westra was the presiding hearing officer, Rivers and two inmate witnesses, Washington and Henderson, said that Balsewicz provoked Rivers' assault by groping

---

[1] Balsewicz makes much of Waupun's policy, or lack thereof, for separating GD inmates from non-GD inmates during showers. The parties' factual submissions are not clear as to the precise protocol, if any, Waupun uses to facilitate GD showering, but that detail is ultimately not relevant to this case.

Rivers' butt. Balsewicz denies provoking Rivers and believes the groping story was concocted to help get Rivers out of segregation. Westra and Rymarkiewicz interviewed Balsewicz about the Rivers altercation. Westra ultimately concluded that an SPN between Balsewicz and Rivers was not necessary.

Following the May 7 altercation, Balsewicz submitted several requests asking to be separated from Rivers. On several occasions, including in connection with her twice-yearly review, Balsewicz also asked to be transferred to another institution, specifically Columbia Correctional Institution, because she did not feel safe at Waupun. *See* (Docket #30-3 at 15) (stating that "I am not safe at [Waupun] as a transgender 'gender dysphoric' inmate from either inmates who harm me or staff when they ignore my complaints of being threatened."). In a written request dated May 10, 2017, for example, Balsewicz asked Westra to separate her from Rivers by transferring her to a different prison. (Docket #30-5 at 15).[22] In that request, Balsewicz also stated that due to the May 7 altercation and subsequent conduct hearing, Rivers, Henderson, and Homer were all threats to her safety. *Id.* In another request dated May 28, 2017, Balsewicz requested a transfer because she had been threatened and assaulted by two inmates, Rivers and another named Walton or Waltow, since being placed at Waupun. (Docket #30-4 at 2). Balsewicz also complained about other issues at Waupun causing her to desire a transfer, including that she believed staff members were "playing with" her medications. *See* (Docket

---

[22]It appears Balsewicz filed a formal SPN request asking to be separated from Rivers and Westra responded, erroneously, that no such request had been received. *See* (Docket #30-5 at 16–17, #38 at 41). This factual issue does not impact the outcome of this case, and therefore the Court will not delve into its details.

#38 at 9, 23–24 at #30-4 at 3). In June 2017, Balsewicz's mother called Waupun to express concern about Balsewicz's safety. (Docket #30-8 at 30).

There does appear to be one staff member who repeatedly advocated for Balsewicz to be separated from Rivers or transferred. On May 24, 2017, Balsewicz's social worker, Bailey Frame ("Frame"), wrote to Westra stating that Balsewicz wanted to be transferred due to the Rivers assault and recommending that Balsewicz and Rivers be separated. (Docket #30-8 at 32). In November 2017, Frame wrote to the social services director at Waupun to inform her that Balsewicz was very concerned for her own safety and frustrated with staff for not taking her seriously. *Id.* at 34. Frame said she believed that "if [Waupun] is not proactive in this situation that Balsewicz will reach a breaking point and possibly assault staff." *Id.* Therefore, Frame said, it was her "professional opinion that Balsewicz should be transferred to another facility." *Id.*

Rivers was ultimately moved out of NCH, but not because of Balsewicz's requests for separation. Sometime after he was released from segregation following the May 7, 2017 altercation, Rivers learned that Washington had told lies about one of Rivers' friends, and Rivers attacked Washington. (Docket #41 at 9–10). Then, a friend of Washington's named "R.D." started pursuing Rivers with a sharpened weapon. *Id.* at 10. R.D. has a history of extreme violence; he previously killed a guard at another state prison. *Id.* When Waupun staff learned that R.D. was pursuing Rivers to stab him, they relocated Rivers from NCH to a hall on the other side of the prison. *Id.* at 11.

On April 5, 2018, nearly a year after the May 7 altercation between Balsewicz and Rivers, Henderson attacked Balsewicz, pulling her to the ground by her hair and punching her. Several guards responded to the

scene of the incident and pulled Henderson away from Balsewicz. The parties submitted very little factual material that would indicate the reason for this attack. A few days later, Henderson was released from Waupun.

In June 2018, Balsewicz's social worker, Frame, again recommended that Balsewicz be transferred out of Waupun. (Docket #30-3 at 28). As of the date of this Order, Balsewicz is still housed at Waupun. *See* Wisconsin Inmate Locator, https://appsdoc.wi.gov/lop/home.do.

4.  **ANALYSIS**

Balsewicz alleges that Pawlyk, Rymarkiewicz, Westra, and Meli were deliberately indifferent to a serious risk to her safety, in violation of the Eighth Amendment, by failing to protect her from the May 5, 2017 and April 5, 2018 attacks.[3]

The Eighth Amendment protects prisoners against the infliction of cruel and unusual punishment. *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001). "Because officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge from harm from other prisoners." *Id.* To prevail on a deliberate indifference failure-to-protect claim, a plaintiff must show that (1) she was exposed to a "substantial risk to his or her health or safety," and (2) the defendant was "deliberately indifferent to the substantial risk." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012).

---

[3] Very few of the parties' proposed facts tie Rymarkiewicz or Meli to the incidents underlying Balsewicz's claim. Without sufficient personal involvement, these defendants cannot be held liable for a constitutional violation. However, the defendants did not make this argument with respect to Rymarkiewicz and Meli, and because Balsewicz's Eighth Amendment claim fails for a different reason, explained below, the Court will not discuss it further.

The Eighth Amendment is not violated every time an inmate gets attacked by another inmate; prisons, after all, are dangerous places by their nature. *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). And so, "an inmate has no claim 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). Once a prison official knows about a serious risk of harm, he has an obligation "to take reasonable measures to abate it." *Dale,* 548 F.3d at 569 (quoting *Borello v. Allison,* 446 F.3d 742, 747 (7th Cir. 2006)).

In failure-to-protect cases, "[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996) (per curiam) (quotation and internal marks omitted). Complaints that convey "only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Gevas v. McLaughlin*, 798 F.3d 475, 480–81 (7th Cir. 2015) (citing *Dale,* 548 F.3d at 569 ("[The prisoner's] vague statement that inmates were 'pressuring' him and 'asking questions' were simply inadequate to alert the officers to the fact that there was a true threat at play."); *Klebanowski v. Sheahan,* 540 F.3d 633, 639–40 (7th Cir. 2008) (beyond expressing fear for his life, prisoner's statements to guards did not identify who was threatening him or what the threats were); *Grieveson v. Anderson,* 538 F.3d 763, 776 (7th Cir. 2008) (prisoner did not mention to guards that he was perceived to be a "snitch" or otherwise apprise them of a specific threat to his life); *Butera v. Cottey,* 285 F.3d 601,

606 (7th Cir. 2002) (prisoner only stated vaguely that he was "having problems" in his cellblock and "needed to be removed")).

By contrast, "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas*, 798 F.3d at 481 (citation omitted). For example, in *Haley v. Gross*, the Seventh Circuit affirmed a jury's finding of deliberate indifference where the plaintiff inmate repeatedly told guards that his cellmate was intimidating him, acting strangely, and had threatened that "something crucial was going to happen" if one of them was not moved. 86 F.3d 630, 643 (7th Cir. 1996). The plaintiff's cellmate eventually started a fire in the cell, killing himself and severely burning the plaintiff. *Id.* at 637. Both the plaintiff and his cellmate requested to be separated from each other several times in the days leading up to the fire, and several guards had witnessed a heated argument between the plaintiff and his cellmate the night of the fire. *Id.*

In this case, Balsewicz has not produced sufficient evidence to create a jury question as to the subjective element of her claim. As to the May 7, 2017 attack by Rivers, Balsewicz claims to have told Pawlyk two days prior that Rivers threatened her in the shower because she asked why she could not use the stall between two other inmates. In other words, Balsewicz put Pawlyk on notice that Rivers had threated to beat her up *that day in the shower*, but that the threat did not materialize because Balsewicz finished her shower without escalating the situation. Further, it is undisputed that at the same time Balsewicz told Pawlyk about this threat, Balsewicz also complained to Pawlyk that Rivers should not be permitted to shower with the GD inmates. The gist of Balsewicz's grievance to Pawlyk was simply

that there was a problem in the showers that day, and that Rivers was at the heart of it. Balsewicz did not put Pawlyk on notice that Rivers was an ongoing threat to her, or that she believed the bath house spat was unresolved and would later escalate into an attack. This evidence is a far cry from showing that Pawlyk "effectively condone[d]" the attack two days later "by allowing it to happen." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

Balsewicz's mountain of evidence showing that she repeatedly asked to be separated from Rivers *after the attack* does not support a finding that any defendant knew *prior to the attack* that Rivers posed a serious threat to Balsewicz's safety. She takes issue with the fact that the defendants ignored or denied her separation and transfer requests. But the defendants' decision not to house Balsewicz apart from Rivers following the incident is simply not relevant to her claim that they failed to protect her from the May 7, 2017 attack. For the same reason, it is not relevant that the defendants ultimately moved Rivers to a different side of the prison because of a threat to his safety, rather than as a result of Balsewicz's entreaties.

As to the April 5, 2018 altercation with Henderson, Balsewicz's stated concerns about Henderson were even more generalized, vague, and stale. In connection with the conduct hearing following the May 7, 2017, attack, Balsewicz warned prison officials that she feared that Rivers, Henderson, and Washington all were ganging up on her and were a threat to her safety. But as time went on, and after months without incident, Balsewicz did not tell the defendants that she remained fearful of Henderson in particular. Her separation and transfer requests centered on Rivers (and another inmate with whom she had a previous altercation, who the parties do not discuss in any detail). If Balsewicz had a specific reason

to believe that Henderson was going to attack her in spring 2018, and if she told the defendants about her concern, she has not produced evidence to prove it.

It is true that Balsewicz repeatedly asked to be transferred out of Waupun following the May 7, 2017 attack, citing fears for his own safety. And, given that Rivers had been relocated to a different cell hall for at least some of the time between the May 2017 and April 2018 attacks, it would be reasonable to expect the defendants to infer that Balsewicz's fears were premised on something else beyond Rivers. But the defendants cannot protect Balsewicz from something they are not warned about. Balsewicz's generalized complaints about feeling unsafe were not enough to put the defendants on notice of an imminent threat to Balsewicz's safety that was preventable by anything short of extreme measures like constant surveillance or, as Balsewicz would have it, a prison transfer. Balsewicz cannot expect to announce generalized fears for her safety and then be permitted to pick a new prison assignment. What's more, the defendants might reasonably question whether Balsewicz would fare any better at a different prison; it is undisputed that Balsewicz was in a fight with, and seriously injured, an inmate at a prison where she was previously housed.

It is clear that Balsewicz has interpersonal issues with other GD inmates at Waupun. The record in this case reads like a script of a middle school drama, complete with love triangles and hair pulling and rumor mills. It is unfortunate that the drama also included two acts of violence, with Balsewicz the victim of each. But as the Seventh Circuit had said in other failure-to-protect cases, prisons are dangerous places, and prison officials will be not liable for Eighth Amendment violations every time an inmate attacks another inmate. Here, there is simply insufficient evidence

that the defendants had knowledge of a specific risk of harm that Rivers or Henderson posed to Balsewicz before each of them attacked her. For that reason, Balsewicz's claim cannot survive to trial.

5. **CONCLUSION**

On the undisputed facts in the record, summary judgment is appropriate in favor of the defendants on Balsewicz's Eighth Amendment failure-to-protect claim.[4] The Court must, therefore, grant the defendants' motion, deny Balsewicz's motion as moot, and dismiss this action with prejudice. Finally, the motion for an injunction that Balsewicz filed after the close of summary judgment briefing, based on the same facts underlying her Eighth Amendment claim, will also be denied as moot.

Accordingly,

**IT IS ORDERED** that the Defendants' motion for summary judgment (Docket #35) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the Plaintiff's motion for summary judgment (Docket #28) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that the Plaintiff's motion for an injunction (Docket #49) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

---

[4]Because the Court finds summary judgment is appropriate on the merits, the Court does not reach the defendants' request for application of the doctrine of qualified immunity. *See* (Docket #36 at 13–15).

Dated at Milwaukee, Wisconsin, this 19th day of September, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge