In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 19-3062

JOHN H. BALSEWICZ, a/k/a Melissa Balsewicz,[*]

*Plaintiff-Appellant,*

*v.*

JONATHAN S. PAWLYK, *et al.,*

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:18-cv-97 — **J.P. Stadtmueller**, *Judge.*

———————————

ARGUED MAY 28, 2020 — DECIDED JUNE 26, 2020

AMENDED JULY 2, 2020

———————————

Before WOOD, *Chief Judge*, and MANION and KANNE,
*Circuit Judges.*

———————————

[*] Balsewicz, who has been diagnosed with Gender Dysphoria and is taking cross-gender hormones, is recognized by the Wisconsin Department of Corrections as a transgender inmate.

KANNE, *Circuit Judge*. When a prison official knows that an inmate faces a substantial risk of serious harm, the Eighth Amendment requires that official to take reasonable measures to abate the risk.

Inmate John "Melissa" Balsewicz reported to a prison guard that while she was in the shower house, another inmate threatened to beat her up.[1] The guard, Sergeant Jonathan Pawlyk, took no action in response to Balsewicz's report; and two days later, the inmate who had threatened Balsewicz punched her in the head repeatedly, causing her to fall unconscious.

Balsewicz filed a claim against Sergeant Pawlyk and other prison officials under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983. She alleged that Sergeant Pawlyk failed to take reasonable measures to abate a known, substantial risk of serious harm to her, and thus violated one of her Eighth Amendment rights. Granting summary judgment to Sergeant Pawlyk, the district court reasoned that the threat Balsewicz reported to the guard could only be understood as expiring once the inmates left the shower house, so no factfinder could conclude that Sergeant Pawlyk knew Balsewicz faced an ongoing risk of serious harm.

Because a reasonable juror could conclude otherwise based on the submitted evidence, and because Sergeant Pawlyk is not entitled to qualified immunity, we reverse.

---

[1] Reference to Balsewicz as "Melissa" and by feminine pronouns is consistent with the district court's order and the parties' briefing in this case.

## I. BACKGROUND[2]

The events underlying this lawsuit occurred at Waupun Correctional Institution in Wisconsin. Wisconsin Department of Corrections policy requires that transgender prisoners taking cross-gender hormones, like Balsewicz, must shower separately from inmates who are not transgender or intersex. *See* Wis. Dep't of Corrs., Div. of Adult Insts. Policy No. 500.70.27. In March 2017, Balsewicz began complaining that inmates who were not transgender or intersex were being allowed to shower with those who are, including her. Balsewicz eventually identified Denzel Rivers as one of those inmates, believing Rivers falsely claimed to be transgender to receive housing in a single cell.

On May 5, 2017, Rivers and Balsewicz were in a shower house with other inmates. Rivers told Balsewicz to stay out of the shower stall between two transgender inmates, and Balsewicz asked him why. Rivers responded, "Don't worry about it, punk ass h[o]nky! I'll beat the fuck out of you!" Another inmate asked Rivers, "Why you threaten her like that?" to which Rivers returned, "Mind your business before you get [the] same treatment."

Balsewicz finished showering and went straight to Sergeant Pawlyk, the regular supervising sergeant in the North Cell Hall, where prisoners with Gender Dysphoria are housed. Balsewicz told Pawlyk "everything which had

---

[2] Because this case comes to us on appeal from the district court's grant of summary judgment, our description reflects our view of the facts in the light most favorable to the nonmoving party—Balsewicz—with all reasonable inferences drawn in her favor. *Daugherty v. Page*, 906 F.3d 606, 609 (7th Cir. 2018).

transpired" in the shower house and complained that Rivers should not be showering with her and the other transgender inmates because he wasn't really transgender or intersex. She repeatedly asked Sergeant Pawlyk to report her concerns for her personal safety following Rivers's threat. Nearby inmates witnessed this interaction, and one recalled that Balsewicz "appeared agitated and fearful" and was talking in a "pleadingly assertive manner." Later that day, Balsewicz asked another prison official to remind Sergeant Pawlyk to report her "personal safety concerns of inmate River[s]'s threat, with a supervisor." Sergeant Pawlyk ultimately took no action on Balsewicz's complaint.

Two days later, when Rivers and Balsewicz were leaving a dining hall with other inmates, Rivers "without any type of provocation or warning" punched Balsewicz multiple times in the head. Balsewicz collapsed, lost consciousness, and experienced dizziness and numbness in her face.

After exhausting her administrative remedies, Balsewicz filed a complaint against Sergeant Pawlyk and other prison officials. The claim at issue here is one against Sergeant Pawlyk, under 42 U.S.C. § 1983, that he failed to protect Balsewicz from a known and substantial risk of serious harm from Rivers. The district court granted summary judgment to Sergeant Pawlyk. The court reasoned that Balsewicz had not produced enough evidence for a jury to conclude that the guard knew Rivers's threat was ongoing after the inmates finished showering. Balsewicz appealed, and Sergeant Pawlyk reasserted that he is entitled to qualified immunity.

## II. ANALYSIS

We review both the district court's grant of summary judgment and Sergeant Pawlyk's assertion of qualified immunity *de novo*. *Orlowski v. Milwaukee County*, 872 F.3d 417, 421 (7th Cir. 2017). We first address whether a jury could decide that Sergeant Pawlyk knew Balsewicz faced a substantial risk of serious harm from Rivers after she left the shower house. We then turn to whether Sergeant Pawlyk is entitled to qualified immunity.

### A. Genuine Issue of Material Fact

Summary judgment for Sergeant Pawlyk is appropriate if he, as the movant, has shown that no genuine dispute as to any material fact exists and he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Conversely—setting aside the guard's assertion of a qualified-immunity defense, which we address later—summary judgment is inappropriate if the submitted evidence would allow a reasonable jury to return a verdict for Balsewicz. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Because Balsewicz bears the burden of proof at trial, a jury would not be able to return a verdict for her if she has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [her] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Sergeant Pawlyk contends that this is precisely why summary judgment is appropriate: Balsewicz failed to support an element essential to her case— namely, Sergeant Pawlyk's knowledge that Balsewicz faced an excessive risk to her safety after she left the showers.

The guard's knowledge is indeed an essential part of Balsewicz's case, and it is the only contested element of her § 1983 claim. Her claim is that Sergeant Pawlyk, under color

of state law, subjected Balsewicz to a deprivation of her Eighth Amendment right not to be inflicted with cruel and unusual punishment. *See* 42 U.S.C. § 1983. That right is enforceable against the state of Wisconsin through the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660, 664–66 (1962).

The Eighth Amendment's "cruel and unusual punishments" clause requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)); *see* U.S. Const. amend. VIII. This means that a constitutional violation inheres in a prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate. *Farmer*, 511 U.S. at 828. A "deliberate indifference" violation has two components, one objective and one subjective.

The objective component is that the prisoner must have been exposed to a harm that was objectively serious. *Farmer*, 511 U.S. at 834. No one contests that this criterion was met here. Indeed, Rivers's violent beating of Balsewicz in the head is the kind of in-prison assault that "is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see, e.g.*, *Brown v. Budz*, 398 F.3d 904, 910–11 (7th Cir. 2005).

The subjective component is that the prison official must have known of and disregarded an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 837–38; *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020). Specifically, the official must have been "aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists," and he must have "draw[n] th[at] inference." *Farmer*, 511 U.S. at 837.

Finally, an official is not liable if he takes reasonable measures to abate the known risk. *Id.* at 844. It is undisputed that Sergeant Pawlyk took no action in response to Balsewicz's complaint. And Sergeant Pawlyk does not argue that his inaction would have been reasonable had he known Balsewicz continued to face a substantial risk of serious harm from Rivers after Balsewicz left the showers.

So, the only contested part of Balsewicz's claim is the subjective component: Sergeant Pawlyk's knowledge of a substantial risk of serious harm to Balsewicz.

A prison official's subjective knowledge can be shown "in the usual ways" that facts are demonstrated, "including inference from circumstantial evidence." *Id.* at 842. For example, if an inmate provides evidence that the risk of serious harm was obvious, a factfinder could reasonably infer that the official knew of the risk. *Id.* Likewise, a factfinder could typically infer an official's knowledge from evidence that the inmate complained to the official about a specific threat to her safety—so long as the complaint "identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant," as opposed to a complaint that "convey[s] only a generalized, vague, or stale concern about one's safety." *Gevas v. McLaughlin*, 798 F.3d 475, 480–81 (7th Cir. 2015).

Sergeant Pawlyk maintains that Balsewicz failed to adduce enough evidence that he knew Balsewicz faced an ongoing risk of serious harm from Rivers. He says a factfinder would have to conclude that he, the guard, understood

Balsewicz's complaint as communicating only a stale concern for her safety, not an imminent risk of harm. In his view, the problem with Balsewicz's case is not that Rivers's threat in the showers amounted to less than a substantial risk of serious harm; it's that the threat could only be understood as having expired before Balsewicz told the guard about it.

We disagree. A reasonable juror could conclude, based on the submitted evidence, that Sergeant Pawlyk knew the threat from Rivers was ongoing. To start, Rivers used the imperative mood and future tense to deliver the threat: "Don't worry about it, punk ass h[o]nky! I'll beat the fuck out of you!" And he gave no assurance that the threat would wash away by the time the inmates finished their showers. Even if the threat were understood as conditional—that is, that Rivers would beat up Balsewicz only if she "worr[ied] about" Rivers's demand not to shower between two of the inmates—Balsewicz signaled to Sergeant Pawlyk that she indeed "worr[ied] about it," by complaining to him about the incident.

Sergeant Pawlyk points out that Balsewicz has given two different accounts of what Rivers said, the other version being, "Don't worry about it, punk ass h[o]nky, don't make me beat the fuck out of you!" This version, he argues, indicates that Balsewicz needed to do something more in the shower to trigger the threat's execution. But we view the facts in the light most favorable to Balsewicz. *See Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014); *Daugherty v. Page*, 906 F.3d 606, 609 (7th Cir. 2018). And even in this overtly conditional form, the threat could be understood as ongoing so long as Balsewicz worried about why Rivers didn't want Balsewicz to

shower in a certain stall; and Balsewicz's complaint to Sergeant Pawlyk suggests she was so worried.

Next, by Balsewicz's and other inmates' accounts included in the record,[3] when Balsewicz complained to Sergeant Pawlyk about Rivers's threat, she "appeared agitated and fearful" and was talking in a "pleadingly assertive matter." She did not say that the danger was now over. And she urged Sergeant Pawlyk not to allow Rivers to shower with her and the other transgender inmates, signaling that Rivers's threat created a future—not a foregone—risk to Balsewicz's safety.

Adding to her request that Rivers not be allowed to shower with her in the future, Balsewicz repeated her concern to another guard during the same shift, asking that guard to remind Sergeant Pawlyk to report the threat to a supervisor.

Taken altogether, then, the evidence would allow a reasonable juror to infer, from circumstantial evidence, both that Sergeant Pawlyk was "aware of facts" indicating the danger of serious harm to Balsewicz was not yet over and that Sergeant Pawlyk drew such an inference. *Farmer*, 511 U.S. at 837. This is not to say that a jury would have to find Sergeant Pawlyk knew the excessive danger was ongoing. But the evidence does not compel the opposite finding, either. For this reason, a genuine issue of material fact exists on an element of Balsewicz's deliberate-indifference claim.

Notwithstanding the existence of a genuine issue of material fact, Sergeant Pawlyk advances another basis on

---

[3] For purposes of summary judgment, Balsewicz's verified complaint functions as an affidavit. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017).

No. 19-3062

which summary judgment may be granted: qualified immunity. We turn to that issue now.

### B.  Qualified Immunity

Under the doctrine of qualified immunity, government officials are liable for civil damages—and subjected to suit in the first place—only when their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Whether an official is entitled to qualified immunity on a motion for summary judgment turns on whether the plaintiff has both (1) alleged that the official committed acts violating a clearly established right and (2) adduced "evidence sufficient to create a genuine issue as to whether the [official] in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see Orlowski*, 872 F.3d at 422–23.

We've already determined that Balsewicz demonstrated a genuine issue as to whether Sergeant Pawlyk—who did nothing in response to the reported threat—in fact knew that Balsewicz faced an imminent risk of serious harm.[4] This leaves the question whether the conduct Balsewicz alleged (and sufficiently supported with evidence) violated a clearly established right. We conclude that it did.

When evaluating a qualified-immunity defense, the focus "is on whether the officer had fair notice that [his] conduct

---

[4] Our view of the facts in the light most favorable to the nonmovant (Balsewicz) applies to our evaluation of whether Sergeant Pawlyk is entitled to qualified immunity. *See, e.g., Plumhoff*, 572 U.S. at 768; *Orlowski*, 872 F.3d at 421.

was unlawful." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). If any reasonable officer in Sergeant Pawlyk's shoes—after discovering that Balsewicz faced a substantial danger of being beaten up by Rivers—would have understood that taking no action to address that danger violated Balsewicz's right, then the right was clearly established. *See Plumhoff*, 572 U.S. at 778–79. Put another way, if applying the law at that time to the facts "would have left objectively reasonable officials in a state of uncertainty," then immunity is appropriate. *Horshaw v. Casper*, 910 F.3d 1027, 1030 (7th Cir. 2018).

It is true that, here, *factual* uncertainty remains about whether Sergeant Pawlyk knew Balsewicz faced an imminent, rather than a lapsed, danger of serious harm. But that is not the kind of uncertainty that matters. The reason is that we approach the qualified-immunity inquiry by treating as true the evidence-supported facts and inferences favoring Balsewicz. *See, e.g., id.*; *Orlowski*, 872 F.3d at 421–22. The appropriate question, then, is this: Assuming Sergeant Pawlyk was informed that Balsewicz faced an ongoing threat from Rivers, did Sergeant Pawlyk's inaction violate one of Balsewicz's clearly established rights?

The answer is yes. *Farmer v. Brennan* made clear that being violently assaulted by a fellow inmate in prison is a serious harm. *See Farmer*, 511 U.S. at 834; *Brown*, 398 F.3d at 910–11. And *Farmer* also made clear what a prison official must do when he learns that an inmate faces an excessive danger of such a harm: take reasonable measures to abate the danger. *See Farmer*, 511 U.S. at 832–33, 844–45; *see also Horshaw*, 910 F.3d at 1030 ("*Farmer* clearly establishes the governing rules."); *Velez v. Johnson*, 395 F.3d 732, 736 (7th Cir. 2005) (observing that "[t]here can be no debate" that the right "to be

free from deliberate indifference to rape and assault" was clearly established by September 1999).

Cases since *Farmer* have confirmed that inmates have a right to have officers take reasonable measures to abate a known risk of violent assault by a fellow inmate.

For example, in *Velez v. Johnson*, a pretrial detainee[5] pushed an emergency call button and specifically told a guard that he was having a conflict with his cellmate; the guard did nothing in response; and the cellmate assaulted and raped the complainant. 395 F.3d at 734–36. We recognized that if the guard appreciated the danger the cellmate posed, the guard's inaction violated the detainee's right to be reasonably protected from violent assault by another inmate—which was a clearly established right at the time. *Id.* at 736.

Similarly, in *Gevas v. McLaughlin*, an inmate informed prison officials that his cellmate had threatened to stab him; the officials took no protective action other than having previously informed the inmate that he could refuse housing and reap the disciplinary consequences; and the cellmate

---

[5] When *Velez* was decided, we recognized that, although a pretrial detainee's deliberate-indifference claim derives from the Fourteenth Amendment's due-process clause rather than the Eighth Amendment, there is "little practical difference between the two standards"; the Eighth Amendment test applied when analyzing a § 1983 claim brought under the Fourteenth Amendment. *Velez*, 395 F.3d at 735 (quoting *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000)); *see Brown*, 398 F.3d at 910 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999)). *Contra Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (concluding that conditions-of-confinement claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)); *Miranda v. County of Lake*, 900 F.3d 335, 351–52 (7th Cir. 2018).

stabbed the concerned inmate. 798 F.3d at 485. We held that,
if the officials appreciated that the inmate was in danger of
being stabbed by his cellmate, their inaction violated the
inmate's right to be protected from the assault, and "[a] prison
official could not logically believe" otherwise. *Id.*

Accordingly, at the time Sergeant Pawlyk was informed
that Rivers presented an ongoing excessive danger to
Balsewicz, a competent officer in Sergeant Pawlyk's shoes
would have known that taking no protective action in
response—no additional investigation, no reporting to a
supervisor, no measures to keep Rivers away from Balsewicz,
etc.—violated Balsewicz's right to be reasonably protected
from a violent beating by another inmate. Given the clear
governing rules set out by *Farmer*, and given their application
in cases confirming that inaction in like circumstances violates
an inmate's constitutional right, Sergeant Pawlyk is not
entitled to qualified immunity.

### III. CONCLUSION

Balsewicz presented enough evidence for a reasonable
jury to conclude that Sergeant Pawlyk knew Balsewicz faced
an ongoing, substantial risk of serious harm at the hands of
another inmate. She therefore demonstrated a genuine issue
of material fact appropriate for trial. And Sergeant Pawlyk's
conduct—as alleged and supported by Balsewicz—violated a
clearly established right. So, Sergeant Pawlyk is not entitled
to qualified immunity. We thus REVERSE the district court's
grant of summary judgment and REMAND for proceedings
consistent with this opinion.

CERTIFIED COPY

A True Copy
Teste:

*[signature]*

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit



In the

# United States Court of Appeals

## For the Seventh Circuit

―――――――――――

No. 19-3062

JOHN H. BALSEWICZ, a/k/a Melissa Balsewicz,*

*Plaintiff-Appellant,*

*v.*

JONATHAN S. PAWLYK, *et al.*,

*Defendants-Appellees.*

―――――――――――

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:18-cv-97 — **J.P. Stadtmueller**, *Judge*.

―――――――――――

ARGUED MAY 28, 2020 — DECIDED JUNE 26, 2020

―――――――――――

Before WOOD, *Chief Judge*, and MANION and KANNE,
*Circuit Judges*.

KANNE, *Circuit Judge*. When a prison official knows that an
inmate faces a substantial risk of serious harm, the Eighth

―――――――――――

*Balsewicz, who has been diagnosed with Gender Dysphoria and is
taking cross-gender hormones, is recognized by the Wisconsin
Department of Corrections as a transgender inmate.

Amendment requires that official to take reasonable measures to abate the risk.

Inmate John "Melissa" Balsewicz reported to a prison guard that while she was in the shower house, another inmate threatened to beat her up.[1] The guard, Sergeant Jonathan Pawlyk, took no action in response to Balsewicz's report; and two days later, the inmate who had threatened Balsewicz punched her in the head repeatedly, causing her to fall unconscious.

Balsewicz filed a claim against Sergeant Pawlyk and other prison officials under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983. She alleged that Sergeant Pawlyk failed to take reasonable measures to abate a known, substantial risk of serious harm to her, and thus violated one of her Eighth Amendment rights. Granting summary judgment to Sergeant Pawlyk, the district court reasoned that the threat Balsewicz reported to the guard could only be understood as expiring once the inmates left the shower house, so no factfinder could conclude that Sergeant Pawlyk knew Balsewicz faced an ongoing risk of serious harm.

Because a reasonable juror could conclude otherwise based on the submitted evidence, and because Sergeant Pawlyk is not entitled to qualified immunity, we reverse.

---

[1] Reference to Balsewicz as "Melissa" and by feminine pronouns is consistent with the district court's order and the parties' briefing in this case.

## I. BACKGROUND[2]

The events underlying this lawsuit occurred at Waupun Correctional Institution in Wisconsin. Wisconsin Department of Corrections policy requires that transgender prisoners taking cross-gender hormones, like Balsewicz, must shower separately from inmates who are not transgender or intersex. *See* Wis. Dep't of Corrs., Div. of Adult Insts. Policy No. 500.70.27. In March 2017, Balsewicz began complaining that inmates who were not transgender or intersex were being allowed to shower with those who are, including her. Balsewicz eventually identified Denzel Rivers as one of those inmates, believing Rivers falsely claimed to be transgender to receive housing in a single cell.

On May 5, 2017, Rivers and Balsewicz were in a shower house with other inmates. Rivers told Balsewicz to stay out of the shower stall between two transgender inmates, and Balsewicz asked him why. Rivers responded, "Don't worry about it, punk ass h[o]nky! I'll beat the fuck out of you!" Another inmate asked Rivers, "Why you threaten her like that?" to which Rivers returned, "Mind your business before you get [the] same treatment."

Balsewicz finished showering and went straight to Sergeant Pawlyk, the regular supervising sergeant in the North Cell Hall, where prisoners with Gender Dysphoria are housed. Balsewicz told Pawlyk "everything which had

---

[2] Because this case comes to us on appeal from the district court's grant of summary judgment, our description reflects our view of the facts in the light most favorable to the nonmoving party—Balsewicz—with all reasonable inferences drawn in her favor. *Daugherty v. Page*, 906 F.3d 606, 609 (7th Cir. 2018).

transpired" in the shower house and complained that Rivers should not be showering with her and the other transgender inmates because he wasn't really transgender or intersex. She repeatedly asked Sergeant Pawlyk to report her concerns for her personal safety following Rivers's threat. Nearby inmates witnessed this interaction, and one recalled that Balsewicz "appeared agitated and fearful" and was talking in a "pleadingly assertive manner." Later that day, Balsewicz asked another prison official to remind Sergeant Pawlyk to report her "personal safety concerns of inmate River[s]'s threat, with a supervisor." Sergeant Pawlyk ultimately took no action on Balsewicz's complaint.

Two days later, when Rivers and Balsewicz were leaving a dining hall with other inmates, Rivers "without any type of provocation or warning" punched Balsewicz multiple times in the head. Balsewicz collapsed, lost consciousness, and experienced dizziness and numbness in her face.

After exhausting her administrative remedies, Balsewicz filed a complaint against Sergeant Pawlyk and other prison officials. The claim at issue here is one against Sergeant Pawlyk, under 42 U.S.C. § 1983, that he failed to protect Balsewicz from a known and substantial risk of serious harm from Rivers. The district court granted summary judgment to Sergeant Pawlyk. The court reasoned that Balsewicz had not produced enough evidence for a jury to conclude that the guard knew Rivers's threat was ongoing after the inmates finished showering. Balsewicz appealed, and Sergeant Pawlyk reasserted that he is entitled to qualified immunity.

## II. ANALYSIS

We review both the district court's grant of summary judgment and Sergeant Pawlyk's assertion of qualified immunity *de novo*. *Orlowski v. Milwaukee County*, 872 F.3d 417, 421 (7th Cir. 2017). We first address whether a jury could decide that Sergeant Pawlyk knew Balsewicz faced a substantial risk of serious harm from Rivers after she left the shower house. We then turn to whether Sergeant Pawlyk is entitled to qualified immunity.

### A. *Genuine Issue of Material Fact*

Summary judgment for Sergeant Pawlyk is appropriate if he, as the movant, has shown that no genuine dispute as to any material fact exists and he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Conversely—setting aside the guard's assertion of a qualified-immunity defense, which we address later—summary judgment is inappropriate if the submitted evidence would allow a reasonable jury to return a verdict for Balsewicz. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Because Balsewicz bears the burden of proof at trial, a jury would not be able to return a verdict for her if she has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [her] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Sergeant Pawlyk contends that this is precisely why summary judgment is appropriate: Balsewicz failed to support an element essential to her case—namely, Sergeant Pawlyk's knowledge that Balsewicz faced an excessive risk to her safety after she left the showers.

The guard's knowledge is indeed an essential part of Balsewicz's case, and it is the only contested element of her § 1983 claim. Her claim is that Sergeant Pawlyk, under color

of state law, subjected Balsewicz to a deprivation of her Eighth Amendment right not to be inflicted with cruel and unusual punishment. *See* 42 U.S.C. § 1983. That right is enforceable against the state of Wisconsin through the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660, 664–66 (1962).

The Eighth Amendment's "cruel and unusual punishments" clause requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)); *see* U.S. Const. amend. VIII. This means that a constitutional violation inheres in a prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate. *Farmer*, 511 U.S. at 828. A "deliberate indifference" violation has two components, one objective and one subjective.

The objective component is that the prisoner must have been exposed to a harm that was objectively serious. *Farmer*, 511 U.S. at 834. No one contests that this criterion was met here. Indeed, Rivers's violent beating of Balsewicz in the head is the kind of in-prison assault that "is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see, e.g.*, *Brown v. Budz*, 398 F.3d 904, 910–11 (7th Cir. 2005).

The subjective component is that the prison official must have known of and disregarded an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 837–38; *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020). Specifically, the official must have been "aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists," and he must have "draw[n] th[at] inference." *Farmer*, 511 U.S. at 837.

Finally, an official is not liable if he takes reasonable measures to abate the known risk. *Id.* at 844. It is undisputed that Sergeant Pawlyk took no action in response to Balsewicz's complaint. And Sergeant Pawlyk does not argue that his inaction would have been reasonable had he known Balsewicz continued to face a substantial risk of serious harm from Rivers after Balsewicz left the showers.

So, the only contested part of Balsewicz's claim is the subjective component: Sergeant Pawlyk's knowledge of a substantial risk of serious harm to Balsewicz.

A prison official's subjective knowledge can be shown "in the usual ways" that facts are demonstrated, "including inference from circumstantial evidence." *Id.* at 842. For example, if an inmate provides evidence that the risk of serious harm was obvious, a factfinder could reasonably infer that the official knew of the risk. *Id.* Likewise, a factfinder could typically infer an official's knowledge from evidence that the inmate complained to the official about a specific threat to her safety—so long as the complaint "identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant," as opposed to a complaint that "convey[s] only a generalized, vague, or stale concern about one's safety." *Gevas v. McLaughlin*, 798 F.3d 475, 480–81 (7th Cir. 2015).

Sergeant Pawlyk maintains that Balsewicz failed to adduce enough evidence that he knew Balsewicz faced an ongoing risk of serious harm from Rivers. He says a factfinder would have to conclude that he, the guard, understood

Balsewicz's complaint as communicating only a stale concern for her safety, not an imminent risk of harm. In his view, the problem with Balsewicz's case is not that Rivers's threat in the showers amounted to less than a substantial risk of serious harm; it's that the threat could only be understood as having expired before Balsewicz told the guard about it.

We disagree. A reasonable juror could conclude, based on the submitted evidence, that Sergeant Pawlyk knew the threat from Rivers was ongoing. To start, Rivers used the imperative mood and future tense to deliver the threat: "Don't worry about it, punk ass h[o]nky! I'll beat the fuck out of you!" And he gave no assurance that the threat would wash away by the time the inmates finished their showers. Even if the threat were understood as conditional—that is, that Rivers would beat up Balsewicz only if she "worr[ied] about" Rivers's demand not to shower between two of the inmates— Balsewicz signaled to Sergeant Pawlyk that she indeed "worr[ied] about it," by complaining to him about the incident.

Sergeant Pawlyk points out that Balsewicz has given two different accounts of what Rivers said, the other version being, "Don't worry about it, punk ass h[o]nky, don't make me beat the fuck out of you!" This version, he argues, indicates that Balsewicz needed to do something more in the shower to trigger the threat's execution. But we view the facts in the light most favorable to Balsewicz. *See Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014); *Daugherty v. Page*, 906 F.3d 606, 609 (7th Cir. 2018). And even in this overtly conditional form, the threat could be understood as ongoing so long as Balsewicz worried about why Rivers didn't want Balsewicz to

No. 19-3062                                                                9

shower in a certain stall; and Balsewicz's complaint to Sergeant Pawlyk suggests she was so worried.

Next, by Balsewicz's and other inmates' accounts included in the record,[3] when Balsewicz complained to Sergeant Pawlyk about Rivers's threat, she "appeared agitated and fearful" and was talking in a "pleadingly assertive matter." She did not say that the danger was now over. And she urged Sergeant Pawlyk not to allow Rivers to shower with her and the other transgender inmates, signaling that Rivers's threat created a future—not a foregone—risk to Balsewicz's safety.

Adding to her request that Rivers not be allowed to shower with her in the future, Balsewicz repeated her concern to another guard during the same shift, asking that guard to remind Sergeant Pawlyk to report the threat to a supervisor.

Taken altogether, then, the evidence would allow a reasonable juror to infer, from circumstantial evidence, both that Sergeant Pawlyk was "aware of facts" indicating the danger of serious harm to Balsewicz was not yet over and that Sergeant Pawlyk drew such an inference. *Farmer*, 511 U.S. at 837. This is not to say that a jury would have to find Sergeant Pawlyk knew the excessive danger was ongoing. But the evidence does not compel the opposite finding, either. For this reason, a genuine issue of material fact exists on an element of Balsewicz's deliberate-indifference claim.

Notwithstanding the existence of a genuine issue of material fact, Sergeant Pawlyk advances another basis on

---

[3] For purposes of summary judgment, Balsewicz's verified complaint functions as an affidavit. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017).

which summary judgment may be granted: qualified immunity. We turn to that issue now.

### B.  Qualified Immunity

Under the doctrine of qualified immunity, government officials are liable for civil damages—and subjected to suit in the first place—only when their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Whether an official is entitled to qualified immunity on a motion for summary judgment turns on whether the plaintiff has both (1) alleged that the official committed acts violating a clearly established right and (2) adduced "evidence sufficient to create a genuine issue as to whether the [official] in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see Orlowski*, 872 F.3d at 422–23.

We've already determined that Balsewicz demonstrated a genuine issue as to whether Sergeant Pawlyk—who did nothing in response to the reported threat—in fact knew that Balsewicz faced an imminent risk of serious harm.[4] This leaves the question whether the conduct Balsewicz alleged (and sufficiently supported with evidence) violated a clearly established right. We conclude that it did.

When evaluating a qualified-immunity defense, the focus "is on whether the officer had fair notice that [his] conduct

---

[4] Our view of the facts in the light most favorable to the nonmovant (Balsewicz) applies to our evaluation of whether Sergeant Pawlyk is entitled to qualified immunity. *See, e.g., Plumhoff*, 572 U.S. at 768; *Orlowski*, 872 F.3d at 421.

was unlawful." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). If any reasonable officer in Sergeant Pawlyk's shoes—after discovering that Balsewicz faced a substantial danger of being beaten up by Rivers—would have understood that taking no action to address that danger violated Balsewicz's right, then the right was clearly established. *See Plumhoff*, 572 U.S. at 778–79. Put another way, if applying the law at that time to the facts "would have left objectively reasonable officials in a state of uncertainty," then immunity is appropriate. *Horshaw v. Casper*, 910 F.3d 1027, 1030 (7th Cir. 2018).

It is true that, here, *factual* uncertainty remains about whether Sergeant Pawlyk knew Balsewicz faced an imminent, rather than a lapsed, danger of serious harm. But that is not the kind of uncertainty that matters. The reason is that we approach the qualified-immunity inquiry by treating as true the evidence-supported facts and inferences favoring Balsewicz. *See, e.g., id.*; *Orlowski*, 872 F.3d at 421–22. The appropriate question, then, is this: Assuming Sergeant Pawlyk was informed that Balsewicz faced an ongoing threat from Rivers, did Sergeant Pawlyk's inaction violate one of Balsewicz's clearly established rights?

The answer is yes. *Farmer v. Brennan* made clear that being violently assaulted by a fellow inmate in prison is a serious harm. *See Farmer*, 511 U.S. at 834; *Brown*, 398 F.3d at 910–11. And *Farmer* also made clear what a prison official must do when he learns that an inmate faces an excessive danger of such a harm: take reasonable measures to abate the danger. *See Farmer*, 511 U.S. at 832–33, 844–45; *see also Horshaw*, 910 F.3d at 1030 ("*Farmer* clearly establishes the governing rules."); *Velez v. Johnson*, 395 F.3d 732, 736 (7th Cir. 2005) (observing that "[t]here can be no debate" that the right "to be

free from deliberate indifference to rape and assault" was clearly established by September 1999).

Cases since *Farmer* have confirmed that inmates have a right to have officers take reasonable measures to abate a known risk of violent assault by a fellow inmate.

For example, in *Velez v. Johnson*, a pretrial detainee[5] pushed an emergency call button and specifically told a guard that he was having a conflict with his cellmate; the guard did nothing in response; and the cellmate assaulted and raped the complainant. 395 F.3d at 734–36. We recognized that if the guard appreciated the danger the cellmate posed, the guard's inaction violated the detainee's right to be reasonably protected from violent assault by another inmate—which was a clearly established right at the time. *Id.* at 736.

Similarly, in *Gevas v. McLaughlin*, an inmate informed prison officials that his cellmate had threatened to stab him; the officials took no protective action other than having previously informed the inmate that he could refuse housing and reap the disciplinary consequences; and the cellmate stabbed the concerned inmate. 798 F.3d at 485. We held that, if the officials appreciated that the inmate was in danger of being stabbed by his cellmate, their inaction violated the

---

[5] We have repeatedly recognized that, although a pretrial detainee's deliberate-indifference claim derives from the Fourteenth Amendment's due-process clause rather than the Eighth Amendment, there is "little practical difference between the two standards"; the Eighth Amendment test applies when analyzing a § 1983 claim brought under the Fourteenth Amendment. *Velez*, 395 F.3d at 735 (quoting *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000)); *see Brown*, 398 F.3d at 910 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999)).

No. 19-3062                                                          13

inmate's right to be protected from the assault, and "[a] prison official could not logically believe" otherwise. *Id.*

Accordingly, at the time Sergeant Pawlyk was informed that Rivers presented an ongoing excessive danger to Balsewicz, a competent officer in Sergeant Pawlyk's shoes would have known that taking no protective action in response—no additional investigation, no reporting to a supervisor, no measures to keep Rivers away from Balsewicz, etc.—violated Balsewicz's right to be reasonably protected from a violent beating by another inmate. Given the clear governing rules set out by *Farmer*, and given their application in cases confirming that inaction in like circumstances violates an inmate's constitutional right, Sergeant Pawlyk is not entitled to qualified immunity.

### III. CONCLUSION

Balsewicz presented enough evidence for a reasonable jury to conclude that Sergeant Pawlyk knew Balsewicz faced an ongoing, substantial risk of serious harm at the hands of another inmate. She therefore demonstrated a genuine issue of material fact appropriate for trial. And Sergeant Pawlyk's conduct—as alleged and supported by Balsewicz—violated a clearly established right. So, Sergeant Pawlyk is not entitled to qualified immunity. We thus REVERSE the district court's grant of summary judgment and REMAND for proceedings consistent with this opinion.



CERTIFIED COPY

A True Copy
Teste:

_Gordon Company_
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

June 26, 2020

Before:      DIANE P. WOOD, Chief Circuit Judge
             DANIEL A. MANION, Circuit Judge
             MICHAEL S. KANNE, Circuit Judge

|  | JOHN H. BALSEWICZ, also known as MELISSA BALSEWICZ, Plaintiff - Appellant |
| No. 19-3062 | v. |
|  | JONATHAN S. PAWLYK, et al., Defendants - Appellees |
| **Originating Case Information:** | |
| District Court No: 2:18-cv-00097-JPS Eastern District of Wisconsin District Judge J. P. Stadtmueller | |

The judgment of the District Court is **REVERSED**, with costs, and this case is **REMANDED** in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)

CERTIFIED COPY

A True Copy
Teste:

_Gino J. Agnello_
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

July 20, 2020

To:      Gina M. Colletti
         UNITED STATES DISTRICT COURT
         Eastern District of Wisconsin
         Milwaukee , WI 53202-0000

| No. 19-3062 | JOHN H. BALSEWICZ, also known as MELISSA BALSEWICZ, Plaintiff - Appellant<br><br>v.<br><br>JONATHAN S. PAWLYK, et al., Defendants - Appellees |
|---|---|
| **Originating Case Information:** | |
| District Court No: 2:18-cv-00097-JPS<br>Eastern District of Wisconsin<br>District Judge J. P. Stadtmueller | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:      No record to be returned

**NOTE TO COUNSEL:**
If any physical and large documentary exhibits have been filed in the above-entitled cause, they are

to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                            **Received by:** ____s/Jelena


_____07/20/20          Vekic_____


form name: **c7_Mandate**(form ID: **135**)